IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| THOMAS ANDREW WAGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 3:09-cv-3015-CBK |
| | ) |
| CLARK EQUIPMENT COMPANY, a | ) |
| Delaware corporation; et al. | ) |
| | ) |
| Defendants. | ) |

## BRIEF IN SUPPORT OF DEFENDANT CMI TEREX CORPORATION'S MOTION TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES OR IN THE ALTERNATIVE MOTION TO TRANSFER

This lawsuit arises from an incident which occurred on August 16, 2006, when the Plaintiff was caught in the slats of a windrow elevator. Although the windrow elevator was allegedly assembled in the 1980s by CMI Corporation (now CMI Terex Corporation) with a manual transmission, the Plaintiff asserts that the transmission was altered by Reno Hydraulic & Rebuild, Inc. at the direction of Frehner Construction Company. The Plaintiff claims that this modification was a major factor in his injury. Simply, this Defendant submits that this case should be dismissed because: Reno and Frehener are indispensable parties; Reno has already been dismissed for want of personal jurisdiction; and a motion to dismiss Frehner for lack of personal jurisdiction is pending. Alternatively, this Defendant requests the transfer of this action to a court which has jurisdiction over Reno and Frehner.

## INTRODUCTION

On August 16, 2006, the Plaintiff and a co-worker were allegedly cleaning accumulated asphalt from a paver and Clarco Windrow Elevator.[1] According to the Plaintiff, workers manually chiseled asphalt from the exposed slats on the windrow elevator. The Plaintiff states that once the workers completed work on the exposed slats, the slats were moved by engaging the engine and transmission on the windrow elevator. The Plaintiff further states that, at all times, the engine was running on the windrow elevator. The Plaintiff alleges that a co-worker engaged the engine and transmission while the Plaintiff was leaning into the discharge chute of the elevator.

According to the pleadings and affidavits which have been filed by Plaintiff, Reno and Frehener; this windrow elevator was allegedly assembled by CMI Corporation in the 1980s. Paragraph two of the affidavit of Ron Wager dated October 19, 2009, asserts that the windrow elevator was "originally manufactured with a mechanical transmission to drive the scraper flights." (See Affidavit of Ron Wager attached hereto as Exhibit 1) The documents further assert that the windrow elevator was acquired by Frehner in the 1990s. In paragraph four of his affidavit, Plaintiff's counsel states in part:

> The windrow elevator, upon information and belief, was converted sometime during the 1990s to a hydrostatic, rather than manual, transmission. A plate on a component part of the hydrostatic transmission system identifies Defendant Reno Hydraulic & Rebuild and includes the serial number 97-04-01227. Upon information and belief, Reno is a Sparks, Nevada, corporation and this part was manufactured in production year 1997, which is within the time period that the machine was converted to a hydrostatic drive system.

---

[1] A windrow elevator is commonly referred to as a pick up machine. Although it has an engine and transmission, the windrow elevator is not self propelled. The engine and transmission merely move the slats of the elevator on the windrow elevator. The windrow elevator is propelled by an asphalt paver to which it is attached. The windrow elevator picks up asphalt that is left in a windrow on the ground and transfers the asphalt to the paver.

And on page 10 of Plaintiff's supplemental response to Frehener's motion to dismiss, the Plaintiff claims that the modification to the transmission was a major factor in Plaintiff's injury. (See excerpt of Plaintiff's Supplemental Response to Frehner's Motion to Dismiss attached hereto as Exhibit 2).

Frehener allegedly sold the windrow elevator in March 2000 to Bituminous. At the time of the incident, the Plaintiff claims that Bituminous had leased the windrow elevator to the Plaintiff's employer.

This lawsuit, premised upon negligence, products liability, and breach of warranty, was filed on August 11, 2009. At that time, the Plaintiff named as Defendants Clark Material Handling Company, Ingersoll-Rand Company, Volvo Construction Equipment North America, Inc., CMI Terex Corporation, Baldor Electric Co., Rockwell Automation, Inc., Reno Hydraulic & Rebuild, Inc. and Bituminous Paving, Inc. The Plaintiff filed an amended complaint on August 14, 2009, adding Frehner Construction Company, Inc. as a Defendant. Subsequent thereto, Frehener filed a motion to dismiss for lack of personal jurisdiction. Motions to dismiss were also filed by Baldor and Rockwell. On October 20, 2009, the Plaintiff filed his second amended complaint which changed the name of Clark Material Handling Company to Clark Equipment Company. On November 3, 2009, Frehner reasserted its motion to dismiss. Approximately two weeks later Baldor and Rockwell were dismissed from the litigation after the Plaintiff declined to oppose their motions. The court also granted the application of the Plaintiff to conduct jurisdictional discovery. Shortly thereafter, Reno filed its motion to dismiss for lack of personal jurisdiction. The Plaintiff conceded Reno's motion and Reno was

dismissed in January 2010. Clark, Volvo, and Ingersoll-Rand were dismissed on May 28, 2010. The motion to dismiss by Frehner is pending before the court.

### THIS ACTION MUST BE DISMISSED AS RENO AND FREHNER ARE INDISPENSABLE PARTIES

The question of whether this case should be dismissed is governed by Rule 19 of the Federal Rules of Civil Procedure. Therein, it is provided that a court must first determine if a party is a necessary party. In this regard, Rule 19(a) provides, in pertinent part, that a party is necessary if:

> [T]hat person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If a person is found to be necessary but can't be joined, the court must then determine whether that person is indispensable. As a part of that determination, the court must ascertain whether in equity and good conscience the case should be dismissed. Rule 19(b) sets forth the factors which should be considered:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment entered in the person's absence would be adequate; and
> (4) whether the Plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

(See, e.g. *Schweyer v. Genesis Capital*, 220 F.R.D. 582, 586-593 (S.D. Iowa 2004)).

Although joint tortfeasors are not typically considered indispensable parties, an exception to that rule has been made in cases where the joint tortfeasors are active participants in the tort[2]. For example, in *Whyham v. Piper Aircraft Corporation*, 96 F.R.D. 557 (M.D. Penn. 1982) an aircraft crashed off the coast of Scotland in 1978. The aircraft was designed and manufactured by Piper. After its certification, the aircraft was delivered overseas. At the time of the accident, Air Navigation and Trading Company Limited owned the plane and ADV Aero Services Limited maintained and inspected the plane. Both Air Navigation and Aero were Scottish companies. Following unsuccessful attempts to bring his lawsuit in California and Florida, the Plaintiff filed an action in Pennsylvania. Piper, however, filed a motion to dismiss for failure to join indispensable parties. Specifically, Piper argued that Air Navigation and Aero were indispensable because they could be partly liable, if not entirely liable, for damages by failing to properly maintain and inspect the plane.

Initially, the court considered if Air Navigation and Aero were necessary parties under Rule 19(a) of the Federal Rules of Civil Procedure. Although Piper only needed to satisfy one of the criteria set forth in Rule 19(a), the court found that Piper had satisfied all three. As to the third factor, the court stated at page 561:

> Furthermore, we find Air Navigation and Aero to be necessary parties under subsection 19(a)(2)(ii). If Plaintiff receives a favorable judgment, Defendant may be subject to a substantial risk of incurring multiple or inconsistent obligations. Defendant would have the right to seek

---

[2] No authority from the Eighth Circuit was identified which addressed the question of whether an active participant in the tort was an indispensable party. A discussion of the application of the rules relating to indispensable parties may be found in two Eighth Circuit decisions concerning competing claims to land involving Native American tribes and the United States. (See *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001) and *Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir. 1987)). In both of these cases the Eighth Circuit found that the United States was an indispensable party to fully adjudicating the competing claims. Although the facts of *Spirit Lake Tribe* and *Nichols* differ from the case at bar, the reasoning required to determine indispensability remains the same.

indemnification or contribution from the two Scottish companies in an action in Scotland. This results in an unnecessary second suit. Additionally, it is conceivable that the jury might proportion liability differently or make contradictory findings of fact resulting in inconsistent obligations. Therefore, under all three criteria set forth in Rule 19, we find that Air Navigation and Aero are necessary parties.

The court then turned its attention to the criteria set forth in Rule 19(b) of the Federal Rules of Civil Procedure to ascertain if the parties were in fact indispensable. With regard to the first factor, the court found that Piper, Air Navigation and Aero all risked being prejudiced by the absence of Air Navigation and Aero. Specifically, the Court stated at page 562:

> [L]ooking first to Defendant's interest, a judgment entered absent Air Navigation's and Aero's presence subjects Defendant to being judged solely responsible for a liability it possible shares. See *Federal Resources Corp.*, 408 F.2d at 878. Defendant has a clear interest in having the liability issue decided consistently as to all supposed wrongdoers. *Evergreen Park Nursing & Convalescent Home, Inc.*, 417 F.2d at 1115. Without Air Navigation's and Aero's joinder, Piper cannot present its defense adequately. Moreover, Defendant may either be forced to assume full responsibility for a liability shared with the Scottish companies or to pursue a second action against the companies for indemnity or contribution. The latter alternative subjects Defendant to the unnecessary waste of time, efforts, and costs of a second proceeding. It also subjects Defendant to the possibility of inconsistent verdicts. See *Gottlieb v. Vaicek*, 69 F.R.D. 672 (N.D.Ill.1975).

As for the second factor under Rule 19(b), the court stated that it could not conceive of any modification of a judgment that would "reasonably or adequately protect" Piper, Air Navigation or Aero from prejudice.

Turning to the third factor, the court addressed whether a judgment in the absence of Air Navigation or Aero would be adequate. Finding that it would not, the court stated at page 563:

> The third factor addresses the issue of "whether a judgment rendered in the person's absence will be adequate." Fed.R.Civ.Proc. 19(b). The

Supreme Court has interpreted this third criteria to refer to the interest of the courts and the public "in settling disputes in wholes, whenever possible..." *Provident Tradesmen Bank & Trust co.*, 390 U.S. at 111, 88 S.Ct. at 738. To resolve a lawsuit in a single proceeding furthers the interests not only "of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *Evergreen Park Nursing & Convalescent Home, Inc.*, 417 F.2d at 1115. The public interest in having one final adjudication of all the interested parties' rights weighs heavily in favor of Defendant. *Ranger Insurance Co. v. United Housing of New Mexico, Inc.*, 488 F.2d 682 (5th Cir. 1974). Clearly, one dispositive action in Scotland will eliminate multiple suits concerning liability and will serve judicial economy.

Finally, the court found that the Plaintiff, as per the fourth factor, would have an adequate remedy if he filed his lawsuit in Scotland. Accordingly, the court granted Piper's motion to dismiss because Aero and Air Navigation were indispensable parties.

The court also granted a motion to dismiss for failure to join indispensable parties who were joint tortfeasors in *Kern v. Jepperson Sanderson, Inc.*, 867 F. Supp. 525 (S.D. Tex 1994). That lawsuit involved three consolidated cases arising out of two plane crashes in Nepal. One crash involved a plane that was operated and maintained by a company in Thailand. The second aircraft was owned, maintained and operated by a company in Pakistan. The Defendants argued as an alternative ground for dismissal that both the Pakistan and Thailand companies should have been named as Defendants. The court agreed and stated at page 537:

> Like Piper, Defendants argue that the sole cause of the crashes was negligence by owners and operators. If PIA and TAI are not parties to this litigation, Defendants risk being prejudiced and possibly forced to pursue a second action against PIA and TAI for indemnity or contribution. The liability issue may also be decided inconsistently. Because the Court believes PIA and TAI are indispensable parties, this case must be dismissed and adjudicated in a forum that will eliminate multiple suits and serve judicial economy.

This Defendant does not need to belabor this argument. Simply, the present litigation is analogous to *Whyam* and *Kern*. For example, in *Whyam* and *Kern* the plaintiffs filed suits against the alleged manufacturers of the aircraft. In this litigation, plaintiff has filed suit against CMI Terex Corporation alleging that it manufactured the Clarco Windrow Elevator involved in this case. Similarly, in *Whyam* and *Kern* the aircrafts were owned and maintained by foreign corporations who were not subject to the court's jurisdiction. In this case, Plaintiff alleges that Reno modified the windrow elevator.[3] Yet, Reno is not subject to the jurisdiction of this court. The plaintiff in this case also alleges that the windrow elevator was owned by Frehner during the 1990s. In fact, plaintiff has asserted at page 10 of his supplemental response to Frehner's motion to dismiss that Frehner "is the party responsible for modifying the transmission on the windrow elevator—a modification that was a major factor in Plaintiff's injury." (See attached Exhibit 2). Frehner, however, contends that it is not subject to the court's jurisdiction.

Just as the missing parties were in *Whyam* and *Kern*, Reno and Frehner are more than key witnesses; they are active participants in the alleged tort. This is a fact even recognized by the plaintiff who makes allegations against them. Accordingly, based upon the legal analysis set forth in *Whyam* and *Kern*, this defendant respectfully requests that this court find that Frehner and Reno are indispensable parties to this action and dismiss this litigation.

### ALTERNATIVELY, SHOULD THIS COURT DENY CMI TEREX'S MOTION TO DISMISS, TEREX MOVES FOR THE TRANSFER OF THIS ACTION

---

[3] In fact, Reno admits in its motion to dismiss that it may have worked on a hydraulic component part of the windrow elevator.

Should the court conclude this action should not be dismissed, it has the power to transfer this matter to a court in which all parties who plaintiff alleges were active participants could be present. That power lies in 28 U.S.C. §1404(a) which states: "For the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

For example, in *Georgouses v. Natec Resources, Inc.*, 963 F.Supp. 728 (N.D. Ill. 1997), minority shareholders brought suit in Illinois against a Utah Corporation and several of its directors. The corporation's principal place of business was in Houston, Texas. The defendants moved to dismiss the complaint for failure to name indispensable parties and lack of personal jurisdiction. Rather than dismiss the action, the court transferred the matter to Texas. Seeking to promote the efficient administration of justice by its transfer, the court stated at page 731:

> With respect to the public interest, plaintiff argues that Illinois' relationship to this litigation is extraordinarily strong. His support for this argument is again based on the fact that 1,900 Illinois residents are potential class members. This court concludes, however, that the administration of justice will be served more efficiently if the case is litigated before a court that is "closer to the action." *Paul v. Land's End, Inc.*, 742 F.Supp. 512, 514 (N.D.Ill.1990). In the instant case, the allegations focus on defendants' actions in Houston. Moreover, as noted above, there is a potential personal jurisdictional problem in this court with respect to the individual defendants, who may be indispensable parties. No matter how this court were to decide that question, the issue would remain with the case through trial and appeal. The issue is resolved, however, by transfer to Texas, where all potentially indispensable parties are subject to the court's jurisdiction. Section 1404(a) is designed to prevent waste of time, energy, and money, as well as to protect litigants, witnesses, and the public against inconvenience and expense. *Van Gelder v. Taylor*, 621 F.Supp. 613, 618 (N.D.Ill.1985). Transfer to Texas will promote all of those goals.

While the facts of *Georgouses* are quite different from the facts of this litigation, the logic of the court is certainly relevant here. Rather than have less than all parties available for trial and leave issues which would remain through any appeal, the court transferred the matter to a forum where everyone could be present. This court could certainly take a similar approach. And even the plaintiff recognizes the need to have a single court sort everything out. As he stated at page 22 of his supplemental response to Frehner's motion to dismiss:

> It is not in the interest of the orderly administration of justice to dismiss Frehner here and now, forcing a suit to be brought in Nevada. As this claim involves multiple Defendants, it makes the most sense to resolve the matter here and let a single court and jury sort out the competing defenses and allocations of fault. Having a second suit against Frehner in Nevada, would not further the interstate judicial system's interest in justice. (See excerpt of Plaintiff's Supplemental Response to Frehner's Motion to Dismiss attached hereto as Exhibit 2).

Frankly, having a second suit against Reno would also not further the interstate judicial system's interest in justice.[4] Accordingly, this defendant would request, in the alternative, the transfer of this matter to a court in which all parties could be present.

## CONCLUSION

In conclusion, this Defendant submits that Plaintiff's allegations as to Reno and Frehner that they were active participants in plaintiff's injuries makes them indispensable parties to this litigation. Accordingly, this Defendant requests that the Court either dismiss this action or transfer it to a jurisdiction where all parties can be present.

---

[4] Yet, that is exactly what we have now. On August 5, 2010, the plaintiff, Thomas Andrew Wager, filed a lawsuit against Frehner Construction Company and Reno Hydraulic & Rebuild, Inc. in the United States District Court for the District of Nevada. (An excerpt of the complaint is attached as Exhibit 3.)

Respectfully Submitted,

RITER, ROGERS, WATTIER & NORTHRUP, LLP

8/10/10       By: _____
                  Robert C. Riter, Jr.

319 S. Coteau – P. O. Box 280
Pierre, SD 57501-0280
605-224-5825
Fax: 605-224-7102
r.riter@riterlaw.com

AND

Cary E. Hiltgen, OBA #4219
J.R. "Randy" Baker, OBA #452
Hiltgen & Brewer, PC
One Benham Place, Suite 800
9400 North Broadway Extension
Oklahoma City, OK  73114
(405) 605-9000 Telephone
(405) 605-9010 Facsimile
cehiltgen@hiltgenbrewer.com
rbaker@hiltgenbrewer.com
**Attorneys for Defendant
CMI Terex Corporation**

## ELECTRONIC CERTIFICATE OF MAILING

This will certify that on the 10th day of August, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Ronald A. Wager
Bantz, Gosch & Cremer, LLC
305 Sixth Avenue, S.E.
P.O. Box 940
Aberdeen, SD 57402-0970
(605) 225-2232
rwager@bantzlaw.com
**Attorney for Plaintiff**

William G. Beck
300 South Phillips Avenue, Suite 300
P.O. Box 5027
Sioux Falls, South Dakota 57117-5027
(605) 336-3890
(605) 339-3357 Facsimile
Bill.beck@woodsfuller.com
***Attorney for Defendant***
***Bituminous Paving, Inc.***

Shane W. Eden
206 West 14th Street
P.O. Box 1030
Sioux Falls, SD 57101-1030
(605) 336-2880
(605) 335-3639 Facsimile
seden@dehs.com
***Attorney for Defendant***
***Frehner Construction Company, Inc.***

_____
Robert C. Riter, Jr.